UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
N-11-1



UNITED STATES OF AMERICA

v.

DONNA BELLO,

JILL PLATT and

BETTEJANE HOPKINS

CRIMINAL NO. 3:12CR 84 (AWT)

VIOLATIONS:

18 U.S.C. Section 371
(Conspiracy to Defraud the Internal
Revenue Service)

26 U.S.C. Section 7206
(False Tax Return)

18 U.S.C. Section 1343
(Wire Fraud)

18 U.S.C. Section 2
(Aiding and Abetting)

18 U.S.C. Section 1349
(Conspiracy to Commit Wire Fraud)

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
(Conspiracy to Defraud the Internal Revenue Service)

### The Defendants

At all relevant times to this Indictment:

1.      The defendant DONNA BELLO ("BELLO") was a resident of Guilford, Connecticut.

2.      The defendant JILL PLATT ("PLATT") was a resident of Guilford, Connecticut.

3.      The defendant BETTEJANE HOPKINS ("HOPKINS") was a resident of Essex,

Connecticut.

## The Gifting Table Pyramid Scheme

4.      BELLO, PLATT and HOPKINS were leaders in a gifting tables pyramid scheme ("Gifting Tables"). A Gifting Table is configured as a four-level pyramid, with eight participants assigned to the bottom row, four participants assigned to the third row, two participants assigned to the second row, and one participant assigned to the top row.

5.      Participants refer to the participant on the top row as the "Dessert", the two participants on the second row as "Entrees", the four participants on the third row as "Soup and Salads", and the eight participants on the bottom row as "Appetizers".

6.      To join Gifting Tables, new participants must pay $5,000, typically cash, to the Dessert, that is, the participant occupying the top position on the pyramid. The $5,000 payment, which is characterized as a gift, secures the new participant a position as an Appetizer on the bottom row.

7.      Participants move from the bottom row of the pyramid and progress through Gifting Tables by recruiting additional women to join.

8.      When eight new participants have joined Gifting Tables, each having made a $5,000 "gift" to the woman occupying the Dessert position at the top of the pyramid, the Dessert leaves the Gifting Table and keeps the $40,000 paid by the eight new participants. A particular Gifting Table is then split, with the two participants occupying the Entree position on the second row moving to the top position of the two, new pyramids. The other incumbent members of the Gifting Table move up a row on one of the two newly formed pyramids, and the search for sixteen new participants begins.

9.      The success of the Gifting Tables depends on new participants joining and making the $5,000 "gift".

### The Conspiracy

10.      From approximately 2008 to approximately 2011, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, BELLO, PLATT and HOPKINS did unlawfully, willfully and knowingly conspire, combine, confederate and agree with each other and with persons known and unknown to the Grand Jury to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the Internal Revenue Service ("IRS") in the ascertainment, computation, assessment and collection of the revenue, that is, federal income taxes.

### Purposes and Objects of the Conspiracy

11.      The purposes and objects of the conspiracy were for BELLO, PLATT and HOPKINS, and their co-conspirators, to enrich themselves by obtaining or causing to be obtained monies received from women recruited to join Gifting Tables through the use of materially false statements and representations regarding the true nature of Gifting Tables; to impair, impede, obstruct, or defeat the payment of income taxes; to conceal the income received from participation in Gifting Tables and prevent the United States, in particular the IRS, from discovering and identifying such income received; to prevent the ascertainment, computation, assessment and collection by the IRS of federal income tax due from participating in Gifting Tables; and to conceal the conspiracy from others.

### Manner and Means of the Conspiracy

The manner and means by which BELLO, PLATT and HOPKINS, and their co-conspirators, sought to accomplish the purposes and objects of the conspiracy included the following:

12. It was part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, oversaw and profited from Gifting Tables.

13. It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, led informal meetings, formal meetings, parties, conferences, and conference calls in which they made and caused to be made materially false representations and omitted material facts concerning Gifting Tables.

14. It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, prepared and caused to be prepared written materials to be distributed to recruits and participants of Gifting Tables that contained materially false representations and omissions of material facts regarding the true nature of the pyramid scheme.

15. It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, intentionally concealed from recruits and participants that Gifting Tables was a pyramid scheme dependent solely on the continual recruitment of additional participants.

16. It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, intentionally misrepresented to recruits and participants that Gifting Tables was not a pyramid scheme.

17. It was further part of the conspiracy that BELLO and PLATT, and their co-conspirators, intentionally misrepresented to recruits and participants that the monies given and received in Gifting Tables were legally considered tax-free "gifts" under the Internal Revenue Code.

18. It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, intentionally misrepresented and caused others to misrepresent that lawyers had

approved Gifting Tables as legal ventures that generated tax-free proceeds under the Internal Revenue Code.

19.     It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, intentionally misrepresented and caused others to misrepresent that accountants had approved Gifting Tables as ventures that generated tax-free proceeds under the Internal Revenue Code.

20.     It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, advised and counseled participants not to report on their tax returns monies received through participation in Gifting Tables.

21.     It was further part of the conspiracy that BELLO and PLATT, and their co-conspirators, advised and counseled participants against depositing cash into bank accounts unless the deposit was less than the amount that would obligate the bank to report the transaction to the government.

22.     It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, through the use of emails, conference calls, and meetings, caused participants to use false representations and material omissions to recruit new Gifting Tables participants.

23.     It was further part of the conspiracy that BELLO, PLATT and HOPKINS, and their co-conspirators, received "gifts" of $5,000 from other participants in the Gifting Tables that were typically accompanied by "gifting statements" in which the participants disavowed all expectation of a benefit from having made the $5,000 "gift" to a Dessert, such as BELLO, PLATT or HOPKINS. In truth and fact, the participants would not have willingly given $5,000 to a Dessert unless having

first been told by BELLO, PLATT or HOPKINS that the participants could expect a much larger, legal and tax-free "gift" in return.

Overt Acts

24.    In furtherance of the conspiracy, and to accomplish its purposes and objects, BELLO, PLATT and HOPKINS, and their co-conspirators, committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut:

a.    On or about January 12, 2008, BELLO emailed a participant: "I believe within a year of your starting . . . you will make $80,000 on your small investment."

b.    On or about December 6, 2008, HOPKINS emailed BELLO and others concerning the need for a "real training" to show how Gifting Tables can work to their advantage.

c.    On or about January 17, 2009, HOPKINS emailed a participant: "My goal was to come up with 80k GREEN BEANS this year. It is going to happen, it could also be 120k, who knows. This is awesome!"

d.    On or about March 11, 2009, PLATT emailed a participant: "It's sort of a joke that I refer to our freezer as the ATM."

e.    On or about March 19, 2009, BELLO emailed HOPKINS and another participant about two recruits: "They need to Shit or get off the pot . . . My suggestion is to have them put in 1,000.oo [sic] each so they can come to trainings . . . .They have had enough parties. Its [sic] costing us a small fortune in their food and wine delights. No more parties until they commit with the cash."

f.    On or about May 28, 2009, BELLO emailed HOPKINS: "keep bringing in new blood. It is a fact when women get excited about making money, they tend to over extend

6

themselves by going on to too many tables at once . . . Make sure they understand the time commitment."

g. On or about June 15, 2009, BELLO emailed HOPKINS and several other women: "P.S. I am not a fucking saint . . . . I'm teaching you all how to make an extra 80 grand a year . . . . Isn't that enough?"

h. On or about August 20, 2009, BELLO emailed HOPKINS and other women: "I am a woman who has been thru dessert 10 times, 5 years experience and HARD work . . . I have experienced first hand every possible issue except for failing to move forward. I personally do not want to see this brilliant vehicle stop because protocol isn't followed."

i. On or about August 20, 2009, BELLO emailed a woman in Florida: "[I will spend] quite a bit of time this fall, winter and spring in Florida working with you on these tables . . . there is no reason we can't make 80,000 beans a year there . . . in the sunshine state[.]"

j. On or about October 2, 2009, HOPKINS emailed PLATT and BELLO: "Donna, you need to find your happy and healthy face . . . . Are you worried that this will blow up like it did in Naples? We need to keep silent and under the radar."

k. On or about October 9, 2009, BELLO forwarded an email to HOPKINS and others that read: "bj, jill and I have been a triangle for a year through several tables . . . We work well together . . . We don't want to change this . . . It's a no brain-er. . . . Bj and Jill follow me Pat and Christine follow bj and Alice and Shelly follow JILL . . . SO ON AND SO ON."

l. On or about October 14, 2009, BELLO failed to report on her personal income tax return the income she derived from her participation in Gifting Tables during 2008.

m.      On or about October 25, 2009, BELLO emailed a participant about where the participant should keep money made from Gifting Tables: "U can keep it in you checking or savings account if you want to. As women we like our own stash.  Keep it in a safe.  Keep it quiet because rather not have red flags raised. Hiring accountants and atterneys [sic] is costly."

n.      On or about October 29, 2009, BELLO emailed a recruit: "Hi its [sic] really very simple. All you have to do is 1. Gift 5,000 2. Invite on two women who gift 5,000 within 2 months 3. Within 8 months to a year you make 40,000."

o.      On or about November 5, 2009, BELLO emailed participants and a recruit: "We have over 70 women who have gone through dessert.  Most of them more than once.  Over 20 have gone through 6 times and more.  Over 5 million dollars have exchanged hands.  No one person who has followed our guidelines had lossed [sic]. So if I seem as though I have confidence. It [sic] because we have seen much success."

p.      On or about February 10, 2010, BELLO emailed a participant: "care for you however you are playing with the big girls now, and keep in mind this also is a business which reflects on us."

q.      In or about March 2010, BELLO, PLATT and HOPKINS edited the Gifting Tables guidelines that were subsequently distributed to participants in the scheme.

r.      On or about March 8, 2010, HOPKINS failed to report on her personal income tax return the income she derived from her participation in Gifting Tables during 2009.

s.      On or about March 21, 2010, BELLO led a meeting with several participants in response to a newspaper article in the New Haven Register regarding the legality of the Gifting Tables.

8

t.      On or about March 22, 2010, BELLO emailed several participants under the subject heading:"dont [sic] worry." The emailed stated in part: "we had a meeting here last night with a women who is a lawyer on our table . . . she teaches law also . . .we were reassured [sic] us we are not illegal if we go by our guidelines[.]"

u.      In or about April 2010, PLATT told participants that Gifting Tables was not a pyramid scheme because it would take more than twenty years to run out of women to join.

v.      On or about April 23, 2010, BELLO caused an email to be sent to participants stating in part: "In the 5 years since Donna introduced this concept to us - NO ONE has EVER lost any money within our groups - EVER."

w.      On or about May 18, 2010, BELLO held a meeting at her house in Guilford, Connecticut with a number of participants, at which BELLO, PLATT and HOPKINS attempted to intimidate a participant who questioned whether Gifting Tables were legal.

x.       On or about June 3, 2010, BELLO sent a text message to a participant: "You were never lied to. There are no victims. And if there are we are all victims. This table is not illegal until a judge drams [sic] it that. You need to calm down."

y.      On or about June 15, 2010, BELLO emailed a participant: "the tables are not illegal" and "All but a few gifts received have gone to charity . . . I do not have money to give to you. Im [sic] sorry."

z.      On or about August 10, 2010, BELLO failed to report on her personal income tax return the income she derived from her participation in Gifting Tables during 2009.

aa.      On or about October 13, 2010, PLATT failed to report on her personal income tax return the income she derived from her participation in Gifting Tables during 2009.

bb.    On or about October 5, 2010, BELLO emailed PLATT and a participant: "You chose to gift, your family chose to gift. You and your family r [sic] not victims . . . There were no promises made by me. I do not promise. I have only invited women to look at this gift that is offered and if it feels right for them so be it."

cc.    On or about October 29, 2010, PLATT told a participant in Branford, Connecticut who had been interviewed by IRS agents that the participants had done nothing illegal and that the IRS could not figure out its own tax laws.

dd.    On or about June 10, 2011, BELLO told an accountant in a telephone call that the accountant did not have to speak with the IRS regarding BELLO's involvement in Gifting Tables.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Filing a False Tax Return)

25.    On or about October 14, 2009, in the District of Connecticut, the defendant DONNA BELLO willfully made and subscribed a United States Individual Income Tax Return, Form 1040, on behalf of herself for the calendar year 2008 that was verified by an electronic declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, and which income tax return she did not believe to be true and correct as to every material matter in that she reported that the total income for the calendar year 2008 was $8,650, whereas as she then and there well knew and believed, the total income for calendar year 2008 was substantially higher because she failed to report an amount of income that was derived from her participation in Gifting Tables.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THREE
### (Filing a False Tax Return)

26.     On or about August 10, 2010, in the District of Connecticut, the defendant DONNA BELLO willfully made and subscribed a United States Individual Income Tax Return, Form 1040, on behalf of herself for the calendar year 2009 that was verified by an electronic declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, and which income tax return she did not believe to be true and correct as to every material matter in that she reported that the total income for the calendar year 2009 was $7,309, whereas as she then and there well knew and believed, the total income for calendar year 2009 was substantially higher because she failed to report an amount of income that was derived from her participation in Gifting Tables.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FOUR
### (Filing a False Tax Return)

27.     On or about October 13, 2010, in the District of Connecticut, the defendant JILL PLATT willfully made and subscribed a United States Individual Income Tax Return, Form 1040, on behalf of herself and her husband for the calendar year 2009 that was verified by an electronic declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, and which income tax return she did not believe to be true and correct as to every material matter in that she reported that the total income for the calendar year 2009 was $150,040, whereas as she then and there well knew and believed, the total income for calendar year 2009 was substantially higher because she failed to report an amount of income that was derived from her participation in Gifting Tables.

In violation of Title 26, United States Code, Section 7206(1).

11

## COUNT FIVE
### (Filing a False Tax Return)

28.    On or about March 8, 2010, in the District of Connecticut, the defendant BETTEJANE HOPKINS willfully made and subscribed a United States Individual Income Tax Return, Form 1040, on behalf of herself and her husband for the calendar year 2009 that was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, and which income tax return she did not believe to be true and correct as to every material matter in that she reported that the total income for the calendar year 2009 was $104,719, whereas as she then and there well knew and believed, the total income for calendar year 2009 was substantially higher because she failed to report an amount of income that was derived from her participation in Gifting Tables.

In violation of Title 26, United States Code, Section 7206(1).

## COUNTS SIX - SEVENTEEN
### (Wire Fraud)

29.    The allegations contained in Paragraphs 1 through 9 and 11 through 24 of Count One are realleged as though fully set forth herein.

30.    On or about the dates set forth below, in the District of Connecticut and elsewhere, BELLO, PLATT and HOPKINS, and others known and unknown to the Grand Jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as specified above.

31.    On or about the dates set forth below, in the District of Connecticut and elsewhere, BELLO, PLATT and HOPKINS, for the purpose of executing and attempting to execute the

aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sound, the communications set forth below:

| COUNT | DATE | DEFENDANTS | USE OF INTERSTATE WIRES |
|---|---|---|---|
| 6 | 1/12/08 | BELLO | Email from BELLO to a participant regarding making money from Gifting Tables. |
| 7 | 5/16/09 | PLATT and HOPKINS | Email from PLATT to HOPKINS regarding training provided to participants in Gifting Tables. |
| 8 | 5/28/09 | BELLO and HOPKINS | Email from BELLO to HOPKINS regarding continuing to recruit new Gifting Tables participants. |
| 9 | 6/15/09 | BELLO and HOPKINS | Email from BELLO to HOPKINS and other participants regarding learning to make an extra $80,000 a year from Gifting Tables. |
| 10 | 7/26/09 | BELLO, PLATT and HOPKINS | Email from BELLO to PLATT and HOPKINS regarding strategies to ensure Gifting Tables "keep moving forward." |
| 11 | 7/28/09 | BELLO, PLATT and HOPKINS | Email from BELLO to PLATT and HOPKINS regarding a specific Gifting Table that PLATT and HOPKINS participated in. |
| 12 | 8/17/09 | BELLO | Email from BELLO to a participant regarding making money from Gifting Tables. |
| 13 | 8/20/09 | BELLO and HOPKINS | Email from BELLO to HOPKINS and other participants regarding following the "protocol" of Gifting Tables. |
| 14 | 9/04/09 | BELLO and HOPKINS | Email from BELLO to HOPKINS regarding sending a bank check to Gifting Tables participant in Florida. |
| 15 | 10/25/09 | BELLO | Email from BELLO to a recruit regarding questions about the legality of Gifting Tables. |

13

| COUNT | DATE | DEFENDANTS | USE OF INTERSTATE WIRES |
|-------|------|------------|-------------------------|
| 16 | 10/29/09 | BELLO | Email from BELLO to a recruit advising that the recruit will make $40,000 within eight months of joining Gifting Tables. |
| 17 | 6/5/10 | BELLO and PLATT | Email from BELLO to PLATT and other participants explaining among other things, "we will all die of global warming, bacterial war, or big business mistakes" before running out of participants for Gifting Tables. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHTEEN
(Conspiracy to Commit Wire Fraud)

32.     The allegations contained in Paragraphs 1 through 9 and 12 through 24 of Count One are realleged as though fully set forth herein.

### The Conspiracy

33.     From approximately 2008 to approximately 2011, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, BELLO, PLATT and HOPKINS did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to commit an offense against the United States, that is, knowingly and willfully devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property from recruits and participants in Gifting Tables by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and

14

foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

### FORFEITURE ALLEGATION

34.     Upon conviction of any of the offenses alleged in Counts Six through Eighteen, DONNA BELLO, JILL PLATT and BETTEJANE HOPKINS shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, that constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1349 and 1343, including but not limited to a sum of money equal to the total amount of any property, real or personal, that constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 or 1349.

35.     If any of the above-described forfeitable property, as a result of any act or omission of BELLO, PLATT or HOPKINS, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of defendant up to the value of the forfeitable property described above.

15

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

_____
FOREPERSON

UNITED STATES OF AMERICA

_____
DAVID B. FEIN
UNITED STATES ATTORNEY

_____
DOUGLAS P. MORABITO
ASSISTANT UNITED STATES ATTORNEY

16